**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| DEIDRE GILSON HANSEN,<br><br>               Plaintiff,<br><br>     v.<br><br>NOVITIUM ENERGY LLC, *et al.*,<br><br>             Defendants. | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br>No. 23-21077 (KMW-MJS)<br><br>**OPINION** |

APPEARANCES:

MICHAEL D. HOMANS, ESQ.
HOMANS PECK, LLC
1500 JOHN F. KENNEDY BLVD., SUITE 520
PHILADELPHIA, PA 19102

       *Counsel for Plaintiff*

MATTHEW A. LUBER, ESQ.
WILLIAM L. CARR, ESQ.
MCOMBER MCOMBER & LUBER, P.C.
50 LAKE CENTER DRIVE, SUITE 400
MARLTON, NJ 08053

       *Counsel for Defendants Novitium Energy LLC and Jeremy Conner*

**WILLIAMS, District Judge:**

### I.    INTRODUCTION

Plaintiff Deidre Gilson Hansen brings this action against Defendants Novitium Energy LLC and Jeremy Conner, alleging that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, by not paying Plaintiff for her overtime work and that Defendants violated the Conscientious Employee Protection Act ("CEPA"), N.J.S.A. § 34:19-3 when Defendants demoted and ultimately terminated Plaintiff after she opposed and objected to Defendants' plan to submit fake bids to win various contracts.

This matter comes before the Court on Defendants Motion to Dismiss Plaintiff's Amended Complaint, (ECF No. 10). Plaintiff opposed the motion, (ECF No. 11), and Defendant replied, (ECF No. 12). For the reasons that follow, the Court will deny Defendants' Motion to Dismiss, (ECF No. 10).[1]

### II.    BACKGROUND

Plaintiff was hired by Defendant in June 2021 to work as an Executive Assistant. During her first year at the company she received a promotion to Assistant Sales Manager. *See* Amend. Compl. ¶¶ 8, 12, 19, 20. Plaintiff asserts that she was scheduled by Defendant to work 10-hour days during the week and was instructed that her working hours were from 8:00 a.m. to 6:00 p.m. *Id.* ¶¶ 13-14. She notes that she often worked beyond 8:00 p.m. during the week, usually worked through her lunch break, and frequently worked on the weekends. *Id.* Plaintiff further noted that she often sent emails late at night and on weekends to Defendant Conner and others at the company, and at no point did Defendants pay her overtime when she worked outside of her scheduled hours. *Id.* ¶¶ 15-16. She asserts that her primary duties in all three of her positions were

---

[1] Pursuant to Local Civil Rule 78.1(b), this motion will be decided on the papers without oral argument.

nonexempt tasks including: scheduling meetings and sales calls, sending out documents and emails on behalf of the company's executives and sales personnel, including forms and contracts to clients, taking notes in meetings, reviewing call transcripts, assist in recruiting, complete research related to new leads and projects, file organization and management, including updating files, tracking sales projects, and providing support to sales projects and sales managers, among other duties. *Id.* ¶¶ 18-21.

Plaintiff states that after she was promoted to Assistant Sales manager, she began to work on preparing and submitting "bids" in response to Requests for Proposals by various entities. *Id.* ¶ 22. In July of 2022, during a meeting with her supervisor and sales managers who are responsible for "bids," Plaintiff asserts that one of the sales managers said that Defendant Conner instructed him to create fake companies to submit fraudulent bids on contracts in response to the Requests for Proposals in order to make the proposal seem to have the minimum number of bids, which often required a minimum of three bidding entities. *Id.* ¶¶ 24-25. Allegedly, that sales manager explained that Defendant Conner offered to create the fake companies and submit the fraudulent bids if he felt uncomfortable. *Id.* ¶ 28. Plaintiff states that she requested that the sales managers confirm her understanding that the plan was to create fake LLCs and bid on open Requests for Proposals to make it appear that the company had the best bid pursuant to Defendant Conner's directive, and the sales manager "confirmed her understanding." *Id.* ¶ 27. Plaintiff asserts that she "immediately objected to this process," made it clear she would not participate, and then stopped speaking and refused to participate further in the meeting. *Id.* ¶¶ 26, 29-30. According to Plaintiff, her supervisor attempted to assuage Plaintiff's discomfort and claimed that "plenty of other companies did the same thing." *Id.* ¶ 31.

It is alleged that after this meeting, Defendant Conner was "made aware" of Plaintiff's objection to the plan, and "initiated a campaign of reduced duties, demotion, false performance plans, ostracism and retaliation" in order to force Plaintiff to leave the company because of her objection and refusal to participate in the bidding scheme. *Id.* ¶¶ 35-36. Plaintiff avers that within days of the meeting, on or about August 8, 2022, she was sent a "Whistleblower Act" notice[2] and within two weeks of the meeting, she was demoted from Assistant Sales Manager into a lower Sales Administrator position, which eliminated her duties related to the bidding process. *Id* ¶¶ 37-39. In September of 2022, the company put Plaintiff on a 90-day performance improvement plan, ("PIP"), without any "prior criticism, review, or warning about her performance," and provided "false," "vague," and "inconsistent" reasons for the imposition of the plan; however, Plaintiff was able to successfully complete it with positive reviews of her performance by February 2023. *Id.* ¶¶ 40-42. Only two months later in April 2023, she was placed on another PIP for 30 days. *Id.* ¶ 43. During that time, her manager missed or delayed meetings regarding the PIP, failed to identify any performance issues, and referred her to Defendant Conner who instructed her to not contact her manager regarding the PIP, despite Defendant Conner having little knowledge about Plaintiff's day-to-day performance. *Id.* ¶¶ 44-45. Finally, on or about June 14, 2023, Defendants fired Plaintiff, providing vague, false, and pretextual reasons for her termination: Plaintiff asserts that she was terminated in retaliation for having objected to the bid-rigging scheme that Defendant Conner orchestrated and directed. *Id.* ¶¶ 46-50.

---

[2] Plaintiff asserts that she had never received a notice of this kind before during her employment at the company, and that receiving this notice "confirmed" for her that the company "understood [Plaintiff] to be objecting to and opposing fraudulent conduct" that would be covered under CEPA." *Id.* ¶ 37.

### III.   LEGAL STANDARD

#### A.  Federal Rule of Civil Procedure Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is required to accept as true all factual allegations in the complaint and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff, *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint that provides facts "merely consistent with" the defendant's liability "stops short of the line between possibility and plausibility" and will not survive review under Rule 12(b)(6). *Id.* (quoting *Twombly*, 555 U.S. at 557).

Generally, a district court may consider; allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint. *Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC*, 945 F. Supp. 2d 543, 551 (D.N.J. 2013) (citing *Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3d Cir.1990)). Thus, a court cannot consider matters that are extraneous to the pleadings. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). However, courts may consider documents integral to or explicitly relied upon in the complaint without converting the motion to dismiss to one for summary

5

judgment. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *In re Burlington*, 114 F.3d at 1426). In this regard, it is critical to consider "whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *Schmidt*, 770 F.3d at 249.

## IV. DISCUSSION

Here, Plaintiff brings two claims: an FLSA claim, alleging that Defendants did not pay her required overtime compensation for work she performed in a given week in excess of 40 hours, and a CEPA claim, alleging that Defendants fired her because she refused to participate in a fraudulent bidding scheme. The Court will address each claim in turn below.

### A. FLSA Claim

#### i. Defendant Novitium

The FLSA establishes federal minimum wage, maximum hour, and overtime guarantees that cannot be modified by contract, and as applicable to the case at bar, employers must pay employees one and one-half times the regular wage for hours worked in excess of forty hours per week. *Jones v. SCO, Silver Care Operations LLC*, No. 13-7910, 2014 WL 5410627 at *3 (D.N.J. Oct. 23, 2014) (citing 29 U.S.C. §§ 206, 207). Employers who violate the FLSA are liable to the employees affected in the amount of unpaid overtime compensation, and an additional equal amount as liquidated damages. *Id.* (quoting § 216(b)).

To state a claim under the FLSA, a plaintiff must allege that: 1) she was an employee of defendant, 2) the defendant was engaged in commerce, and 3) that the defendant failed to pay the federal minimum wage or overtime compensation for hours worked in excess of forty in a given week. *Hernandez v. Polly Inc.*, No. 22-1244, 2022 WL 17850347 at *2 (D.N.J. Dec. 21, 2022) (internal citations and quotations omitted). Here, the parties do not contest that Plaintiff was an

6

employee of Defendants, nor do they contest that Defendants were engaged in commerce, and therefore the Court can focus on the third prong of the analysis.

With regards to the quality of the allegations necessary to state a claim pursuant to the FLSA, the Third Circuit has held that a plaintiff does not need to identify exact dates and times where he or she worked overtime, but that, at a minimum, a plaintiff must allege forty hours of work in a given workweek as well as some uncompensated time in excess of forty hours. *See Davis v. Abington Mem'l Hosp.*, 765 F.3d 238, 241-243 (3d Cir. 2014) ("[I]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege [forty] hours of work in a <u>given</u> workweek <u>as well as</u> some uncompensated time in excess of the [forty] hours.") (emphasis in original). Essentially, to survive a motion to dismiss, a plaintiff must "provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Perez v. Express Scripts, Inc.*, No. 19-7752, 2020 WL 7654305 at *2 (D.N.J. Dec. 23, 2020) (internal citation omitted).

Whether or not a given allegation surmounts the requirements of plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ward v. Cottman Transmission Sys., LLC*, No. 18-2155, 2019 WL 643605 at *6 (D.N.J. Feb. 14, 2019). What is required in an FLSA context are allegations that demonstrate that a "'typical' week overlapped with the 'frequent' occurrences which could have led to uncompensated overtime." *Id.* at *7 (holding that the allegation that plaintiff "'did routinely work approximately fifty-six (56) hours per week' and that CTS failed to pay Plaintiff the required overtime rate" was sufficient pursuant to the Third Circuit's test). While providing specific examples of occurrences of when a plaintiff worked overtime, or the inclusion of pay stubs are

"exemplar," they are not necessary to establish sufficient pleadings. *See id.* at *7 n.7 (citing *Jones*, 2014 WL 5410627).

Here, Defendants argue that Plaintiff's pleadings do not demonstrate that she worked over 40 hours in a given workweek, or that Defendants knew that she was engaging in overtime work, and thus did not run afoul of the FLSA. However, Plaintiff's pleadings are sufficient to state a claim at this stage.

First, Plaintiff alleges that she was scheduled by Defendant to work 10-hour days on weekdays, which would put her to 50 hours in a regular work week, with Defendant Novitium instructing her to work from 8:00 a.m. to 6:00 p.m. *See* Amend. Compl. ¶¶ 13-14. Plaintiff further averred that she "usually worked through her lunch break," and "frequently worked beyond 8:00 p.m. and on weekends." *Id.* These assertions are sufficient to enable the Court to infer that her "typical" hours overlapped with the "frequent" occurrences which could have led to uncompensated overtime. With regard to Defendants' allegation that they were unaware that Plaintiff worked overtime, Plaintiff explicitly states that Defendant Novitium affirmatively scheduled her to work 10-hour days during the week, and that she would send work product such as emails "late at night and on weekends to Defendant Conner and other officers at Novitium," these factual allegations permit the Court to infer, for the purposes of this motion, that Defendants were on notice of Plaintiff's additional hours worked. *Id.* ¶¶ 13-17.

While Plaintiff's pleadings do not give abundant detail, such is not required at the pleading stage for an FLSA claim to survive a motion to dismiss, and thus the Court will deny Defendants' Motion to Dismiss with regard to Plaintiff's FLSA claim.

## ii.  Defendant Conner

Pursuant to the FLSA, individual liability can be levied against an employer, which is defined as someone "who acts in the interest of an employer in relation to the employee." *See* 29 U.S.C. § 203(d). The viability of such claims is dependent on the "economic realities of the situation" and requires a Court to examine whether an individual supervisor carried out the functions of an employer with respect to the employee. *DeCamillis v. Educ. Info. & Res. Ctr.*, No. 18-11576, 2019 WL 3521959 at *4 (D.N.J. Aug. 2, 2019).  A company's owners, officers, or supervisory personnel may constitute "joint employers" for the purpose of liability pursuant to the FLSA if the person independently exercises control over "the work situation" such as: the power to hire or fire, control over when, where, and in what manner work was to be completed, control over the rate and method of payment, and control over payment records. *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 153-54 (3d Cir. 2014).  The Court notes that, at this stage, the pleadings only need to allege sufficient facts to make out a plausible claim that Defendant Conner was an "employer."

Here, Plaintiff alleges that Defendant Conner, as co-founder and CEO of the company, had significant "operational control" over Plaintiff's conditions of employment, that he oversaw Plaintiff's PIP, and that he was the executive decision-maker in Plaintiff's termination. *See* Amend. Compl. ¶¶ 44, 47, 66.  While the Court believes that some of the allegations are conclusory or contradictory,[3] at this stage, Plaintiff asserts enough factual matter to demonstrate that Defendant Conner acted as an employer.  Specifically, Defendant Conner was an executive officer of the company, and Plaintiff further asserts that he had control over Plaintiff's second PIP,

---

[3] The Court notes that simply stating that Defendant Conner, by virtue of his position, had "significant operational control" over specifically Plaintiff's conditions of employment is too conclusory an allegation, and in the same breath the assertion that he had "little knowledge" of Plaintiff's day-to-day performance, is contradictory. *See* Amend. Compl. ¶¶ 44, 66.

involved himself in the manner of the bidding process, had power to fire employees, and ultimately used that power to terminate her employment. *Id.* ¶¶ 24-28, 44, 47. To that end, in one matter from this District, it was determined that because an individual could fire an employee, the individual could be considered an "employer" at the motion to dismiss stage. *See DeCamillis*, 2019 WL 3521959 at *5 (citing *Andre v. Trinity Health Corp.*, No. 18-3183, 2019 WL 1198959 at * 7 (D.N.J. Mar. 14, 2019)). Therefore, this Court is satisfied that Plaintiff has met her burden at this stage of the proceedings for Plaintiff's individual FLSA claim against Defendant Conner to continue.

### B. CEPA Claim

#### i. Defendant Novitium

The Court now turns to Plaintiff's CEPA claim, where Plaintiff's allegations pose a closer call for the Court in terms of sufficiency. CEPA was enacted to protect and encourage employees to report illegal or unethical workplace activities and discourage employers from engaging in illegal or unethical conduct, and provides in pertinent part: "An employer shall not take any retaliatory action against an employee because the employee does any of the following: [. . .] Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes: (1) is in violation of a law, or a rule or regulation promulgated pursuant to law [ ]; (2) is fraudulent or criminal; or (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment." N.J.S.A. § 34:19-3(c)(1-3). To state a claim pursuant to CEPA, a plaintiff must plead that: 1) she reasonably believed defendants were violating a law, rule, or public policy, 2) that she performed a whistleblowing activity, 3) an adverse employment action was taken against her, and 4) that a

causal relationship exists between the whistleblowing activity and the adverse employment action. *Illiano v. Wayne Bd. of Educ.*, No. 22-114, 2024 WL 687756 at *4 (D.N.J. Feb. 20, 2024).

First, CEPA does not require that the activity complained of be an actual violation of the law or a regulation, only that the employee reasonably believes that to be the case. *Martone v. Jet Aviation Flight Servs.*, No. 19-21011, 2021 WL 1608891 at *5 (Apr. 26, 2021). However, a plaintiff "must nevertheless identify a statute, regulation, rule, or public policy that the plaintiff reasonably believed the defendant violated." *McCarthy v. Musclepharm Corp.*, No. 22-3412, 2023 WL 358561 at *4 (Jan. 23, 2023). Here, where Plaintiff is alleging potentially fraudulent activity, which requires a plaintiff to satisfy the requirements of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"). *Id.* "A plaintiff alleging fraud must therefore support its allegations 'with all of the essential factual background that would accompany the first paragraph of any newspaper story that is, the who, what, when, where and how of the events at issue.'" *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016).

Plaintiff asserts that after she was promoted to Assistant Sales Manager, she was to take part in preparing and submitting "bids" for Defendant Novitium, which she did not have prior experience in. *See* Amend. Compl. ¶¶ 22-23. In a meeting in late July of 2022, two sales managers, one of which was her direct supervisor, told her about Defendant Conner's scheme to create fake LLCs which would submit fake bids to increase the minimum number of bids required for Defendant Novitium to be awarded various contracts. *Id.* ¶24. Plaintiff alleges that she objected to this course of action and asked for clarification from her supervisor about the scheme. *Id.* ¶¶ 26-27. She describes her supervisor explaining that he was instructed to make these fake LLCs and bids, and that if he was not comfortable with that course of action, that Defendant Conner would do it himself. *Id.* ¶¶ 26, 28. The other sales manager allegedly attempted to defend this

plan, claiming that "plenty of other companies did the same thing." *Id.* ¶ 31. Plaintiff notes that she objected again after she received clarification from her supervisor, and that she subsequently stopped speaking and participating in the meeting "[f]urther demonstrating her refusal to engage in [the] unlawful scheme." *Id.* ¶¶ 29-30.

These allegations demonstrate who was involved, (Defendant Conner, along with the two sales managers), what was at issue, (creating fake LLCs and bids to obtain contracts for Defendant Novitium), when, (late July 2022), where, (all of Defendants' decisions relating to Plaintiff were made in New Jersey, *id.* ¶ 11), and how (the sales managers were to create the fake LLCs and bids to demonstrate Defendant Novitium's true bid as the most competitive, and if the sales managers would not participate, Defendant Conner would create the fake LLCs). Thus, the Court is satisfied that at this juncture Plaintiff has articulated that she reasonably believed that Defendants were intending to commit fraud pursuant to Rule 9(b) and satisfies the first prong of the CEPA statute.

Second, a plaintiff must demonstrate that she performed a whistleblowing activity as outlined above pursuant to N.J.S.A. § 34:19-3. A whistleblowing activity occurs when an employee discloses to a supervisor their belief that an activity, policy or practice of the employer is believed to be a violation of the law or objects to such alleged violation. *See* N.J.S.A. § 34:19-3(a)(1), (c)(1). Essentially a complaint must be made to a supervisor or public body about the alleged violation. *Suwanphap v. Pad Thai, Inc.*, No. 10-1762, 2010 WL 2426039 at *2 (D.N.J. Jun. 10, 2010). However, CEPA "does not require any magic words in communicating an employee's reasonable belief of illegal activity" and the phrase "object to" is construed liberally because the statute is intended to be remedial. *Verdone v. Rice & Rice, PC*, No. 23-4224, 2024 WL 1191981 at *12 (D.N.J. Mar. 20, 2024). The New Jersey Supreme Court has construed the

word "object" in CEPA to mean "[t]o hold or present an opposing view" or "[t]o feel adverse to or express disapproval of something." *Id.*

Here, Plaintiff asserts that she "responded in disbelief," "immediately objected" to the plan, and made it "clear she would not participate in the fraudulent scheme" at least twice in the meeting with her supervisor and another sales manager, and that she "stopped speaking and participating in the meeting" to demonstrate her objection. *See* Amend. Compl. ¶¶ 26, 29, 30. The Court finds that these allegations are sufficient because even though these averments do not explicitly state that Plaintiff told her manager that she thought that the scheme was, in fact, fraudulent and illegal, the Court can clearly infer as much. Crucially, although these statements represent a more generalized articulation of what CEPA seeks, Plaintiff provides additional details that enable the Court to make the reasonable inference that her supervisor and the other sales manager present in the meeting understood her objection and reluctance to the plan was due to her perception of the actions discussed as being illegal and fraudulent. Specifically, the other sale's manager's attempt to "justify the bid-rigging scheme, claiming plenty of other companies did the same thing," and Plaintiff's supervisor noting that Defendant Conner would "create the fake LLCs and submit the fraudulent bids if [Plaintiff's supervisor] felt uncomfortable," provides additional facts for the Court to ascertain these individuals understood Plaintiff's objection to the plan was due to her understanding of its unlawfulness. *Id.* ¶¶ 28, 31. Additionally, the fact that Defendant Novitium sent Plaintiff a "Whistleblower Act" notice just days after the meeting provides further credence that the requisite individuals understood Plaintiff's objection was based on her "reasonable belief" of the plan's unlawfulness. *Id.* ¶ 37. Thus, the Court finds that Plaintiff's allegations satisfy the second prong of a prima facie case pursuant to CEPA.

Third, the Parties do not contest that an adverse employment action was taken against Plaintiff. While Defendants assert that the adverse employment actions taken against Plaintiff were due to her poor performance, Plaintiff asserts that her demotion, PIPs, and ultimately her termination, were instituted due to her objection to Defendants' fraudulent bidding scheme.

Specifically, Plaintiff notes that she was demoted from her Assistant Sales Manager role into a lower Sales Administrator position within two weeks of the meeting at issue, and more importantly this new role stripped her of her duties related to preparing and submitting bids. *Id.* ¶¶ 38-39. Several weeks later she was put on her first PIP plan that Plaintiff asserts was given without warning or reason, which she completed satisfactorily. *Id.* ¶¶ 40-42. Two months after the first PIP's completion, she was put on a second PIP that was managed by Defendant Conner, despite him not being her supervisor or related to her role. *Id.* ¶¶ 43-45. She avers that the second PIP again was instituted without any identified performance issues aside from email formatting. *Id.* ¶ 44. Then, on June 14, 2023, Defendants fired Plaintiff based on pretextual and false allegations of poor performance. *Id.* ¶ 46. Plaintiff asserts that all of these adverse employment actions occurred because of her opposition to Defendants' plans to submit fake bids. Thus, Plaintiff's allegations satisfy the third prong.

Fourth, a plaintiff must demonstrate a causal connection between the whistleblowing activity and the adverse employment action. "To demonstrate causation, a plaintiff must show that the retaliatory discrimination was more likely than not a determinative factor in the decision." *Leverett v. Williams-Sonoma Direct, Inc.*, No. 23-2405, 2023 WL 9039568 at *3 (D.N.J. Dec. 30, 2023). When considering the causation prong, a court must remember that establishing a prima facie CEPA claim "is not onerous." *Verdone*, 2024 WL 1191981 at *13. Common evidence to demonstrate a causal link in this regard often focuses on chronological proximity between the

whistleblowing act and adverse employment action, as well as evidence of ongoing antagonism, among other types of circumstantial evidence. *Chesler v. City of Jersey City*, No. 15-1825, 2020 WL 5793698 at *7 (D.N.J. Sept. 29, 2020).  In cases where temporal proximity is held to be sufficient to provide the necessary basis for inference of causality to establish a prima facie case, the temporal proximity must be "very close." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).  However, "[w]hen there may be valid reasons why the adverse employment action was not taken immediately, the absence of immediacy between the cause and effect does not disprove causation." *Martone*, 2021 WL 1608891 at *6 n.13 (quoting *Johnson-Winters v. Redner's Mkt. Inc.*, 610 F. App'x 149, 154 (3d Cir. 2015)).  Courts have found that "even where a plaintiff performs the 'whistle-blowing' activity one year before an adverse employment action, a finder of fact may infer causal connection based on the surrounding circumstances to find a CEPA violation." *McCullough v. City of Atlantic City*, 137 F. Supp.2d 557, 573-74 (D.N.J. 2001) (internal citation and quotations omitted).

The Court notes that the temporal proximity of Plaintiff's initial objection and her ultimate termination is nearly 11 months apart.  However, the Act requires the Court to take into account all of the attendant circumstances, and when reviewing Plaintiff's allegations of demotion and the institution of two allegedly unfounded PIPs prior to her termination, that there are enough factual averments for the Court to infer that the incremental diminution of Plaintiff's duties and responsibilities was due to her objections to allegedly fraudulent conduct.

For instance, Plaintiff alleges that within two weeks of her meeting she was demoted to a roll that stripped her of all of her responsibilities related to the bidding process, the process that Plaintiff asserted an objection to after being told that the plan was to create fraudulent LLCs and bids in order to obtain more contracts for the company. *See* Amend Compl. ¶¶ 38-39.  The timing

of her demotion and the demotion's removal of her power to have input in the process she objected to is sufficiently close enough to be suspect.  Her demotion took place in August of 2022, and by September, she was placed on a 90-day PIP that she asserts was pretextual and without basis.  *Id.* ¶¶ 40-42.  Despite completing her first PIP and receiving positive feedback in February of 2023 she was then put on another allegedly unfounded 30-day PIP in April of 2023.  *Id.* ¶¶ 42-43.  Less than a month after her second PIP was completed, she was fired from the company.  *Id.* ¶¶ 44-46.  Giving all reasonable inferences to Plaintiff and accepting her factual averments as true as required at this stage, her allegations illustrate a steady reduction of her responsibilities which can plausibly be attributed to her having objections to the proposed bidding procedures discussed during the meeting with the sales managers.  Therefore, the Court will permit Plaintiff's CEPA claim to continue.

### ii.  Defendant Conner

Finally, CEPA may provide for individual liability for supervisory employees because CEPA imposes liability on those that act directly or indirectly on behalf of or in the interest of an employer with the employer's consent.  *See Illiano*, 2022 WL 687756 at *4 (quoting N.J.S.A. § 34:19-2(a)).  Essentially, individual liability under CEPA is derived from "normal agency respondeat superior principles" such that both employers and employer's agents could be held liable for retaliation."  *Palladino ex rel. United States v. VNA of S. N.J., Inc.*, 68 F.Supp. 2d 455, 474 (D.N.J. 1999).  Importantly, individual liability can be applied not only to direct supervisors or those who took direct action against a plaintiff but can also be applied to other indirect co-workers who participate in a retaliatory scheme.  *Cappel v. Cnty. of Essex*, No. 22-2226, 2023 WL 8827477 at *5 (D.N.J. Dec. 21, 2023).  At this stage in the proceedings, a court must be mindful of the fact that while individual liability requires specific facts to be asserted against each

individual defendant, often such details are not ascertainable by a plaintiff who would not be "privy to the innerworkings of the retaliatory actions and decisions individuals made against them." *Curley v. Mercury Ins. Servs., LLC*, No. 21-12259, 2022 WL 445633 at *5 (D.N.J. Feb. 10, 2022) (internal citations and quotations omitted).

Here, Plaintiff's Amended Complaint presents another close call: Plaintiff simply asserts that "Defendant Conner was made aware of [Plaintiff's] objections and opposition to Novitium's fraudulent bid-rigging scheme," and that Defendant Conner fired her for this. *See* Amend. Compl. ¶ 35, 47. The Court notes that there are no facts presented to show how Defendant Conner knew of Plaintiff's objection at the meeting. However, there are other facts in the Amended Complaint that provide additional footing for the Court to ascertain Defendant Conner's specific involvement in Plaintiff's ultimate departure from the company: Plaintiff describes how, after satisfactorily completing her first PIP, a second PIP was instituted against her, and this time her direct supervisor refused to advise her or discuss her performance—rather, he instructed Plaintiff to refer to Defendant Conner. *Id.* ¶¶ 43-44. Plaintiff further noted that this assignment was odd given that Defendant Conner did not have knowledge about Plaintiff's day-to-day performance, and that he was simply looking to run her out of the company due to her objections to his plans. *Id.* ¶ 45. These facts permit the Court to make the inference of Defendant Conner's direct involvement in Plaintiff's termination in relation to her objections against the plan to submit fake bids.

While this aspect of the Amended Complaint could benefit from further factual enhancement, the Court is mindful of the nature of CEPA complaints, and that much of the information that could assist Plaintiff in developing the record is in the exclusive control of Defendants. *See Curley*, 2022 WL 445633 at *5. Therefore, this Court will permit Plaintiff's CEPA claim against Defendant Conner to continue to discovery.

## V.    CONCLUSION

Therefore, for the reasons set forth above, Defendants' Motion to Dismiss, (ECF No. 10),

will be **DENIED**.  An order consistent with this Opinion will be entered.

August ⟨30⟩, 2024                    _____
                                     KAREN M. WILLIAMS, U.S.D.J.